UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**LISA M GREENE,**

        **Plaintiff,**

v.                                                               Case No:  6:11-cv-1357-Orl-GJK

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## MEMORANDUM OF DECISION

Lisa M Greene (hereafter "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (hereafter "Commissioner") denying her application for benefits (hereafter "Application"), which alleged a disability onset date of March 29, 2009.  Doc. No. 1.  For the reasons set forth below, the final decision of the Commissioner is **REVERSED** and **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g).

I.      <u>**MEDICAL AND OPINION EVIDENCE**</u>

The only records from a treating or examining physician are from Alan S. Berns, M.D. On April 21, 2009, Dr. Berns began treating Claimant and recommended she avoid caffeine and alcohol, continue marital psychotherapy and exercise.  R. 378-79.  Dr. Berns also wrote a note stating that Claimant is not able to work.  R. 270, 279.  On May 5, 2009, Dr. Berns documented the findings from his initial visit.  R. 279-81.  Dr. Berns indicated that Claimant reported having a depressed mood for the past month, daily crying, insomnia and fatigue.  R. 279.  Dr. Berns noted that Claimant reported losing twenty-five pounds in two months due to decreased appetite, had low self-esteem, difficulty concentrating and loss of interest in hobbies, such as scrap

booking. R. 279. Claimant also reported having racing thoughts, rage and suicidal thoughts. R. 279. Claimant further indicated that she was experiencing anxiety and panic attacks three times per week. R. 279.

Dr. Berns' mental examination revealed that Claimant had coherent, goal directed and relevant speech. R. 280. Dr. Berns indicated that Claimant's affect was full range and appropriate, but she had a depressed mood. R. 280. Claimant denied having hallucinations, delusions or suicidal thoughts. R. 280. Dr. Berns noted that Claimant was alert and oriented to time, place and person. R. 280. Dr. Berns found that Claimant's memory for recent and remote events was intact, but her immediate recall was impaired as she could only recall two out of four words after several minutes delay. R. 280. Dr. Berns noted that Claimant had difficulty performing serial seven subtractions. R. 280. Dr. Berns diagnosed Claimant with moderate major depression of single episode, panic attacks and rule out bipolar affective disorder. R. 281. Dr. Berns assessed Claimant with a GAF score of 60 and indicated that her highest GAF score in the past year was not higher than 75-80. R. 281.[1]

Dr. Berns opined that Claimant "does not appear to be able to work" in any capacity and indicated that he could not characterize her condition as static because she had previously taken an antidepressant without receiving a significant benefit. R. 281. Dr. Berns tentatively estimated Claimant's date for full or partial recovery or remission to be June 22, 2009, and expressed hope that she would be able to return to work at full capacity. R. 281.

On May 12, 2009, Claimant reported having panic and anxiety attacks, and only sleeping three hours a night. R. 275. Claimant also reported that taking Celexa was giving her headaches and that she had previously taken Lexapro without effect. R. 275. Dr. Berns discontinued Celexa and prescribed Pristiq. R. 275. On June 11, 2009, Dr. Berns indicated that Claimant was

---

[1] GAF stands for global assessment of functioning.

sleeping six to seven hours per night and having intermittent depressed mood. R. 371. Dr. Berns also indicated that Claimant had a mild improvement in her ability to concentrate and her suicidal thoughts were less frequent. R. 371. Dr. Berns noted that Claimant was experiencing anxiety and having panic attacks. R. 371. Dr. Berns also noted that Claimant had lost twenty pounds in the last six weeks and she had a good appetite. R. 371. On July 14, 2009, Dr. Berns reported that Claimant was feeling relaxed, less depressed and was exercising. R. 363. Dr. Berns noted that Claimant denied having suicidal thoughts, did not complain of side effects and her concentration was adequate. R. 363.

On September 8, 2009, Claimant reported being worried about her mother and that her husband would soon be deployed. R. 370. Claimant indicated that six days earlier she had tried to kill herself by swallowing pills, but her lap band caused her to vomit them. R. 370. Claimant stated that she was finding it hard to concentrate, feels depressed and had low self-esteem. R. 370. On September 25, 2009, Dr. Berns noted that Claimant continued to have thoughts of killing herself, but denied attempting to do so. R. 364. Claimant denied having hallucinations or delusions, but reported she was not concentrating well and had low self-esteem. R. 364. On October 23, 2009, Dr. Burns indicated that Claimant was feeling less depressed and denied having suicidal thoughts. R. 369. Dr. Burns noted that Claimant was sleeping four hours a night. R. 369. On November 17, 2009, Claimant reported feeling less depressed, but also restless and not sleeping well. R. 422. Claimant denied having suicidal thoughts, but reported continued marital stress. R. 422. Claimant indicated that although she had mild improvement in concentration, she still was unable to concentrate well. R. 422.

On December 15, 2009, Dr. Berns addressed Claimant's ability to perform work activity. R. 381-82. Dr. Berns noted that Claimant's thoughts were organized, she denied having

delusional thoughts or hallucinations, and she was alert and oriented to time, place and person. R. 381. Dr. Berns indicated that Claimant's concentration is impaired because she cannot do simple serial seven subtraction. R. 381. Dr. Berns noted that Claimant's short and long term memory was intact, but her immediate recall is impaired because she could only recall one of four words after several minutes elapsed. R. 381. Dr. Berns diagnosed Claimant with major depression, single episode, and panic attacks. R. 381. Dr. Berns stated that Claimant's prognosis ranged from guarded to poor. R. 381. Dr. Berns opined that Claimant can manage her own funds, but cannot maintain concentration, accept constructive criticism from others, interact with the public and lacks stamina. R. 382. Dr. Berns also opined that Claimant cannot maintain concentration and energy levels necessary for performing work activity eight hours per day, five days a week. R. 382.

On January 25, 2010, Dr. Berns noted that Claimant was not sleeping well and was experiencing occasional anxiety and depressed mood. R. 423. Dr. Berns indicated that Claimant had mild improvement in concentration, had low self-esteem and a decreased appetite. R. 423. On March 22, 2010, Claimant reported having more better days than bad days. R. 455. Dr. Berns indicated that Claimant was still experiencing anxiety and denied having suicidal thoughts. R. 455. On June 21, 2010, Dr. Berns reported that Claimant was being seen for "disability retirement." R. 463. Dr. Berns indicated that Claimant experiences anxiety, occasional hopelessness, has low self-esteem and difficulty with concentration. R. 463.

On October 5, 2010, Dr. Berns noted that Claimant had a few episodes of self-mutilation, the last being in August 2010. R. 464. Dr. Berns also noted that Claimant denied having suicidal thoughts and was having trouble falling asleep. R. 464. On December 13, 2010,

Claimant reported that she and her husband were getting along better, and she was having occasional hand tremors. R. 473.

## II. ADMINISTRATIVE PROCEEDINGS

On April 10, 2009, Claimant filed her Application. R. 117. It was denied initially and on reconsideration. R. 55-56. On February 3, 2010, Claimant requested a hearing before an administrative law judge (hereafter "ALJ"). R. 68-69. On June 22, 2010, Claimant and a vocational expert testified at the hearing. R. 37-52. Claimant testified that she last worked in July 2008, but continued to receive pay checks because she had over 2000 hours of sick leave. R. 40. Claimant stated that her last job was as personnel manager, supervising seventeen employees. R. 41-42. Claimant stated that she stopped this job when she was informed that her job was being eliminated due to a reduction in force. R. 42, 45. Claimant testified that but for the reduction in force she would have been able to continue working that position and upon being told of the reduction in force she made an appointment with her psychologist. R. 46.

Claimant stated that her daughter performs all of the cooking and household chores, and her husband mows the lawn. R. 42-43. Claimant testified that she does not eat at restaurants, read, listen to music, spend time on the computer or engage in hobbies or other activities. R. 43-44. Claimant stated that she grocery shops with her daughter every couple of weeks and only attends church if accompanied by her daughter. R. 44. Claimant indicated that relatives visit once a year and she no longer drives. R. 44-45. Claimant testified that she can dress and bathe herself. R. 45. Claimant testified that her medications sometimes help and they cause her to have migraine headaches and swagger when she walks. R. 41. Claimant stated that she tried to kill herself by pill overdose but she vomited them due to her lap band and another time she thought about killing herself but did not go through with it. R. 45.

The vocational expert classified Claimant's past work as personnel manager, personnel clerk and claims adjuster. R. 47. The ALJ asked the vocational expert whether a person of Claimant's same age and educational background could perform her past relevant work with the following restrictions: can perform light work; must avoid ladders, unprotected heights, operating heavy moving machinery, and unusual stress; and can occasionally bend, crouch, kneel, stoop, squat and crawl. R. 47-48. The vocational expert testified that because stress is not a material factor in any of Claimant's past jobs that the person could perform Claimant's past relevant work. R. 48. The ALJ asked the vocational expert whether the person could perform any entry level jobs if the person had no skills, was restricted to a low stress work environment and simple tasks, and otherwise had the same restrictions previously noted. R. 48. The vocational expert testified that such a person could work as an order caller, routing clerk and microfilm mounter. R. 48-49.

On July 13, 2010, the ALJ issued his decision. R. 18-29. The ALJ found that Claimant has the severe impairments of affective disorder, anxiety, obesity, status post gastric lap band with significant weight loss, degenerative joint disease in her knees and hypertension. R. 20. The ALJ found that Claimant has the residual function capacity (hereafter "RFC") to perform light work with the following restrictions: should avoid ladders, unprotected heights and operating heavy moving machinery; must avoid unusual stress; can occasionally bend, crouch, kneel, stoop, squat or crawl. R. 22.

The ALJ rejected Dr. Berns' opinions regarding the severity of Claimant's limitations because they were inconsistent with his treatment notes. R. 25. The ALJ pointed out that Dr. Berns' treatment notes showed that Claimant "<u>has had a good response to medication</u>," had a GAF score of 60 that was has high as 75-80 in the past year and his findings on mental status

examination were benign. R. 25. Despite rejecting Dr. Berns' opinions regarding the severity of Claimant's limitations, the ALJ gave some weight to Dr. Berns' opinions as "his records do indicate that she has substantially improved with medication and he expected a full recovery in June of 2009." R. 27.

Relying on the vocational expert's testimony, the ALJ found that Claimant can perform her past relevant work as a personnel manager, personnel clerk and injury comp specialist. R. 27. Based on the findings set forth above, the ALJ determined that Claimant is not disabled. R. 29.

### III. LEGAL STANDARDS

#### A. THE ALJ'S FIVE-STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). In *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. (citations omitted). The steps are followed in order. If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

### B.     THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

## C. REMEDIES

Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). To remand under sentence four, the District Court must either find that the Commissioner's decision applied the incorrect law, fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or is not supported by substantial evidence. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (reversal and remand appropriate where ALJ failed to apply correct law or the ALJ failed to provide sufficient reasoning to determine where proper legal analysis was conducted) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)); *Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir. 1996) (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for District Court to find claimant disabled).

This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may also be entitled to an immediate award of benefits where the claimant has suffered an injustice. *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982). The District Court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson*, 99 F.3d at 1089-92, 1095, 1098. Where the District Court cannot discern the basis for the Commissioner's

decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827, 829-30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[2]

## IV. ANALYSIS

Claimant raises three issues on appeal. First, Claimant argues that the ALJ did not properly weigh or consider Dr. Berns' opinions because Dr. Berns' treatment notes are largely illegible and the ALJ mischaracterized Dr. Berns' findings that are legible. Doc. No. 19 at 9-15. Second, Claimant argues that the hypothetical posed to the ALJ did not include all of her impairments. Doc. No. 19 at 15-17. Third, Claimant argues that the ALJ failed to make an adequate credibility determination. Doc. No. 19 at 17-18. Claimant requests the Court reverse the ALJ's decision and award her benefits or, alternatively, remand the case "for further consideration and appropriate application of the law." Doc. No. 19 at 18.

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability. The Eleventh Circuit recently clarified the standard the Commissioner is required to utilize when considering medical opinion evidence. In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178-79 (11th Cir. Jan. 24, 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can

---

[2] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation). After a sentence-four remand, the District Court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion <u>requiring the ALJ to state with particularity the weight given to it and the reasons therefor</u>. *Id.* (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).

Absent good cause, the opinion of a treating physician must be accorded substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citations omitted); *see also Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986).

*Johnson v. Barnhart*, 138 F. Appx. 266, 269 (11th Cir. 2005). Thus, good cause exists to give a treating physician's opinion less than substantial weight when the opinion is not bolstered by the evidence, evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's medical records.

The ALJ gave "some weight" to Dr. Berns' opinions because they were "inconsistent with his opinion that the claimant could not work from April 2009 with moderate depression, although his records do indicate that she has substantially improved with medication and he expected a full recovery in June of 2009." R. 27. The ALJ also stated that "Dr. Berns [sic] records are inconsistent with his opinions that the claimant was disabled and unable to work when he assigned her a code of 60 on the Global Assessment of Functioning Scale that had been as high as 75-80 in the last year." R. 25. Thus, the ALJ gave Dr. Berns' opinions "some weight" because Claimant showed substantial improvement on medication; Dr. Berns expected a full recovery in June 2009; and Dr. Berns assigned Claimant a GAF score of 60. R. 25-27.

To support his finding that Claimant "substantially improved with medication," the ALJ noted that "<u>claimant has had a good response to medication and treatment</u>," citing Dr. Berns' treatment notes in Exhibit 26F.  R. 25 (emphasis in original).[3]  The treatment notes contained in Exhibit 26F do not state that Claimant has substantially improved with medication.  The only treatment note in Exhibit 26F that arguably even comes close is the one dated March 22, 2010, wherein Dr. Berns documented Claimant's statement that she was having more better days than bad days.  R. 454.  To the extent this treatment note may support the ALJ's finding, Claimant correctly points out that Dr. Berns' other treatment notes document times when Claimant reported being better and worse, but never consistently documented improvement due to her medication.  Doc. No. 19 at 14.[4]  Thus, Dr. Berns' treatment notes provide a conflicting picture about whether Claimant was improving.[5]  Further complicating the Court's ability to evaluate the ALJ's decision to give "some weight" to Dr. Berns' opinions is the fact that his treatment notes are only partially legible.[6]  Because Dr. Berns' treatment notes do not reflect that he stated Claimant substantially improved on medication; Dr. Berns' treatment notes are conflicting; and Dr. Berns' treatment notes are only partially legible, the Court cannot conclude that there is

---

[3]  Exhibit 26F consists of 6 pages of treatment notes at R. 453-58.

[4] The Commissioner largely relies on treatment notes the ALJ did not cite to argue that the ALJ's finding that Dr. Berns' treatment notes indicated that Claimant "substantially improved with medication" is supported by substantial evidence.  Doc. No. 22 at 9.  The Court is not permitted to engage in or accept *post hoc* rationalization as a basis to uphold the ALJ's decision.  See *Baker v. Comm'r of Soc. Sec.*, F. Appx. 893, 896 (11th Cir. 2010).  "If an action is to be upheld, it must be upheld on the same bases articulated in the agency's order."  *Id.*

[5] For example, Dr. Berns' July 14, 2009, treatment note indicates that Claimant felt less depressed, had more energy, felt more relaxed and had adequate concentration.  R. 420.  Dr. Berns' March 22, 2010, treatment note indicates that Claimant reported having more "'better days than bad days'" and was experiencing anxiety.  R. 455.  In contrast, on September 8, 2009, Dr. Berns notes that Claimant tried to kill herself by swallowing pills the week prior; and Claimant reported finding it hard to concentrate, feeling depressed and having low self-esteem.  R. 419.  On June 21, 2010, Dr. Berns notes that Claimant was experiencing anxiety, occasional hopelessness and some difficulty concentrating.  R. 463.

[6]  For example, in his October 23, 2009, treatment note, the Court can discern that Dr. Berns is commenting on Claimant's concentration, but cannot determine the nature of the comment.  *See* R. 418.  Similarly, the Court cannot determine the nature of Dr. Berns' comments with regard to Claimant's concentration, sleep and physical movements in his November 17, 2009, treatment note.  *See* R. 422.

substantial evidence to support this reason for giving Dr. Berns' opinions less than substantial weight.

The ALJ also gave Dr. Berns' opinions less than substantial weight because Dr. Berns expected Claimant would make a full recovery by June 22, 2009. R. 27. After seeing Claimant one time, Dr. Berns noted that Claimant had been on antidepressants before without significant benefit and "tentatively" estimated "the expected date of full or partial recovery or remission" to be June 22, 2009. R. 281. Dr. Berns did not find, as the ALJ suggests, that Claimant should have a "full recovery" by June 22, 2009. *See* R. 276. Accordingly, this reason for giving Dr. Bern's opinions less than substantial weight is not supported by substantial evidence.[7]

Finally, the ALJ gave Dr. Berns' opinions "some weight" because he assigned Claimant a GAF score of 60. R. 25. A GAF score of 60 indicates only moderate symptoms. *Wilson v. Astrue*, 653 F. Supp. 2d 1282, 1295 (M.D. Fla. Sept. 3, 2009). Courts in this district, however, recognize that GAF scores are of "questionable value in determining an individual's mental functional capacity." *See id.*; *Gasaway v. Astrue*, No. 8:06-CV-1869-T-TGW, 2008 WL 585113 at *4 (M.D. Fla. Mar. 3, 2008). Further, the Commissioner does not endorse GAF scores in social security disability cases because they have no "'direct correlation to the severity requirements of the mental disorders listings.'" *Wind v. Barnhart*, 133 F. Appx. 684, 692 n.5 (11th Cir. 2005) (internal citation omitted). Thus, the ALJ's reliance on a GAF score as a basis to discount a treating physician's opinion is circumspect. In any event, the ALJ does not articulate how the GAF score is inconsistent with Dr. Berns' opinions. Even if it was inconsistent, courts have determined that a GAF score is not a basis to discount a treating physician's opinion. *See Chavanu v. Astrue*, No. 3:11-cv-388-J-TEM, 2012 WL 4336205 at *4

---

[7] Ultimately, on December 15, 2009, Dr. Berns opined that Claimant cannot work due to an inability to maintain concentration and energy levels. R. 382.

(M.D. Fla. Sept. 21, 2012) (GAF score of 50-53 was neither inconsistent with, nor provided good cause to reject doctor's opinion); *Hill v. Astrue*, No. 1:09CV77-SRW, 2010 WL 3724502 at *12 (M.D. Ala. Sept. 14, 2010) (a GAF score standing alone insufficient to discount doctor's opinion).

Based on the foregoing, the ALJ's reasons for giving less than substantial weight to Dr. Berns' opinions are either unsupported by substantial evidence or legally insufficient.[8] The ALJ's failure to articulate good cause for giving Dr. Berns' opinions considerable weight mandates reversal.[9]

## V. REMEDIES

Claimant requests the Court reverse for an award of benefits. Doc. No. 19 at 18. When an ALJ fails to articulate good cause for giving a treating doctor's opinion less than substantial weight, the remedy is to reverse and remand for further proceedings. *See Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x. 830, 835 (11th Cir. 2011). Accordingly, Claimant's request for an award of benefits is denied.

## VI. CONCLUSION

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g); and

2. The Clerk is directed to enter judgment for Claimant and close the case.

---

[8] Dr. Berns' opinions are particularly important to this case because his are the only ones from a treating physician. *See Lamb*, 847 F.2d at 703 (absent good cause, the opinion of a treating physician must be accorded substantial or considerable weight). If, on remand, the ALJ once again gives Dr. Berns' opinions less than substantial weight, the ALJ may wish to consider obtaining an opinion from a consultative examining physician.

[9] The Court finds this issue dispositive and does not address Claimant's remaining arguments.

**DONE and ORDERED** in Orlando, Florida on March 28, 2013.

```
_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE
```

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Shea A. Fugate
PO Box 940989
Maitland, FL 32794

John F. Rudy, III
Suite 3200
400 N Tampa St
Tampa, FL 33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
Natalie K. Jemison, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable Robert Droker
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Desoto Building #400
8880 Freedom Crossing
Jacksonville, FL 32256-1224